IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NIKI JANE DUKELLIS,

               Plaintiff,

       v.

CAROLYN COLVIN, Acting
Commissioner of Social Security,

               Defendant

Case No.: C-12-05534 JSC

**ORDER GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY
JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

     Plaintiff Niki Jane Dukellis ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405, subdivision (g), seeking judicial review of a final decision by Defendant Carolyn W. Colvin ("Defendant" or "Commissioner"), the Commissioner of the Social Security Administration, denying her disability benefits.  Now pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. (Dkt. Nos. 21, 24.)  After carefully considering the parties' submissions, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Cross-motion for Summary Judgment.  The ALJ did not err in the weight she chose to give to the various medical providers.

//

**PROCEDURAL BACKGROUND**

Plaintiff applied for Supplemental Security Income ("SSI") on January 9, 2009 and Disability Insurance Benefits ("DIB") on January 23, 2009.  Plaintiff alleges that her disability began on September 10, 2008.  The Social Security Administration ("SSA") denied her initial application and also on reconsideration.  Plaintiff then timely filed a request for a hearing before an administrative law judge ("ALJ").

A hearing was held before ALJ Caroline H. Beers on May 27, 2011 in Oakland, California.  Plaintiff and vocational expert ("VE") Lynda Berkley testified at the hearing.  The ALJ issued a written decision denying Plaintiff's application.  After the Appeals Council denied review on August 13, 2012, the ALJ's decision denying Plaintiff's application for a period of disability, SSI, and DIB, became the final decision of the commissioner.  Plaintiff subsequently brought the current action, seeking judicial review pursuant to 42 U.S.C. § 405(g).

**FACTUAL BACKGROUND**

Plaintiff, who was 34 years old when she filed for disability, is currently attending school part-time at Diablo Valley College and has previously earned approximately 90 units at California Polytechnic State University ("Cal Poly").  (Administrative Record ("AR") 48.)  Plaintiff alleges disability on the basis of an auditory processing disorder, learning disability, and anxiety.  (AR 138, 174.)  Plaintiff previously worked as a drafter in computer-aided drafting and as a tutor assisting other students in geology.  Plaintiff engages in the following daily activities: attending school, driving, going out alone, performing household chores, walking three miles, preparing meals, tutoring other students in geology and math, handling finances, watching television, reading, attending religious activities, listening to music, golfing, and walking to the gym.

**A.      Medical Evaluations**

**1.       Dr. Maier**

In July 2006, Plaintiff underwent a psychoeducational assessment by Arlee Maier, Ph.D., a Licensed Educational Psychologist, in connection with Disabled Student Services at Cal Poly.  (AR 262.)  In addition to administering extensive testing, Dr. Maier reviewed Plaintiff's prior psychoeducational testing from Liberty Union High School, a Learning Ability Testing Summary

from Lindamood-Bell performed in 1995, a 1997 and 2006 Central Auditory Processing Disorder ("CAPD") Evaluation from Dr. Judith, and a Learning Assessment from The Hearing Advantage in 2000.

Dr. Maier diagnosed Plaintiff with a learning disability, adjustment disorder, and a CAPD. Despite these disorders, Dr. Maier concluded that Plaintiff could function satisfactorily because she was majoring in structural engineering, was taking three classes per quarter with tutors, and was an individual of average to above average intellectual ability who has great difficulty with language oriented tasks. According to Dr. Maier, Plaintiff does not "play it by ear well" and requires clear and specific instructions, double time on tasks with a limited time frame, and needs to know what will happen next. (AR 269.) Dr. Maier therefore suggested that Plaintiff be placed in highly structured classroom settings where she will feel comfortable in following an established routine in addition to participating in individual psychotherapy, at least once weekly, to help her identify the nature of her problems and develop appropriate coping strategies. Dr. Maier opined that Plaintiff would benefit from an accommodation plan under section 504 of the Rehabilitation Act of 1973 ("Section 504"). 29 U.S.C. § 701.

### 2.     Ms. Paton

In June 2006, Plaintiff was presented to Judith W. Paton, M.A., an audiologist, for an evaluation because Plaintiff was "experiencing striking difficulty taking in ordinary verbal instruction in her work towards a Structural Engineering degree." (AR 302.) Ms. Paton assessed Plaintiff with a central hearing impairment consistent with CAPD and suggested that Plaintiff be placed with instructors (as well as workplace supervisors and management) who are willing to accommodate her disability and special needs. For example, Plaintiff would need a quiet work area and triple time on tests.

### 3.     Ms. Berry

Plaintiff referred herself in April 2007 to Barbara Berry, M.S., a state-licensed Speech Language Pathologist, to obtain "support services from the Disabled Student Center at Cal Poly including printed transcripts of lectures and other possible support to help her access her education."

United States District Court
Northern District of California

1  (AR 287.)  Ms. Berry opined that due to a language processing disorder, Plaintiff qualified for, and

2  would benefit from, Section 504 benefits.

3        **4.**    **Dr. Hood**

4        Dr. Robert Y. Hood is a non-examining state agency physician.  On May 12, 2009, Dr. Hood

5  reviewed the medical evidence of record and concluded that Plaintiff had no medically determinable

6  mental impairments and provided no limitations.  (AR 327-39.)

7        **5.**    **Dr. Khoi**

8        On April 21, 2009, Dr. Sokley Khoi, Ph.D., on referral from the state agency responsible for

9  making determinations in disability matters, reviewed Plaintiff's 2006 test results and administered

10  psychological disability evaluation testing to Plaintiff.  The results ranged from average to superior,

11  with the exception of the Auditory Immediate on WMS-II, which was low average.  (AR 324-25.)

12  Dr. Khoi reported that Plaintiff was alert and oriented, displayed normal short-delay recall and

13  concentration, and, although she appeared slightly anxious, she had a logical and coherent thought

14  process.  He diagnosed Plaintiff with a learning disorder (by history), but found no impairment in

15  Plaintiff's ability to follow simple or complex/detailed instructions, maintain adequate pace to

16  perform one or two-step simple or complex tasks, adapt to changes in job routine, or interact

17  appropriately with co-workers, supervisors, and the public on a regular basis.  (AR 326.)  Likewise,

18  Dr. Khoi concluded that Plaintiff had no impairment in the ability to withstand the stress of a routine

19  workday, or interact appropriately with coworkers, supervisors, or the public on a regular basis.

20        **6.**    **Dr. Kalich**

21        In May 2011, Plaintiff was referred by her attorney to Lisa Kalich, Psy.D., ABPP, for a

22  psychological evaluation.  (AR 384.)  Dr. Kalich is a licensed Clinical Psychologist and is board

23  certified in Forensic Psychology.  On May 24, 2011, Dr. Kalich evaluated Plaintiff, reviewed

24  Plaintiff's medical and psychological records, conducted a clinical interview with Plaintiff, and

25  conducted a collateral interview with Plaintiff's therapist, Mr. Mark Estrada.

26        Dr. Kalich opined that the following diagnoses best characterize Plaintiff's functioning: (1)

27  mood disorder; (2) anxiety disorder; (3) learning disability; (4) auditory processing disorder; (5)

28  personality disorder with obsessive-compulsive; (6) narcissistic; and (7) negative features.  Dr. Kalich

opined that Plaintiff experienced multiple episodes of decompensation and had functional mild to moderate limitations in social functioning, concentration, persistence, and pace.  Dr. Kalich opined that Plaintiff "likely experiences no impairment with regard to most activities of daily living."  (AR. 391.)  With respect to social functioning, however, Dr. Kalich noted that:

> Ms. Dukellis appears to have moderate to marked impairment in social interactions. Throughout her life, Ms. Dukellis has encountered great difficulty forming and sustaining interpersonal relationships, likely as the result of a personality disorder. It is the evaluator's opinion that a personality disorder, rather than her learning disability (which appears to be valid), is the primary cause of her inability to maintain employment. However, her learning disability may also exacerbate or contribute to her difficulty managing relationships. Ms. Dukellis' problems processing auditory information may cause or worsen her difficulties in communicating clearly with others. Her inability to get along with co-workers and supervisors has led her to quit or be terminated from almost all of her prior jobs. Ms. Dukellis' negativistic demeanor would also make her a poor candidate for a job dealing with the public.

(AR 391.)

### 7.    Dr. Tomsky

Jana Tomsky, M.D., is Plaintiff's primary care physician at Clayton Valley Medical Group. Plaintiff first visited Dr. Tomsky on September 11, 2009, three days after Plaintiff was involved in a motor vehicle accident.  Plaintiff subsequently visited Dr. Tomsky on November 8, 2010 in connection with her disability paperwork, CAPD, and anxiety.  Dr. Tomsky's progress notes indicate that Plaintiff has a short attention span, difficulty waiting for her turn, that Plaintiff's behavior causes problems at school and work, and that Plaintiff's symptoms are aggravated by deadlines, distractions, and stress.  Dr. Tomsky diagnosed Plaintiff with a learning disability and anxiety, and stated that, since the alleged onset date, Plaintiff's auditory processing disorder has contributed to her disability and that she would benefit from supplemental services, such as having tutoring and transcribed tests or recordings from class.  Dr. Tomsky also commented that Plaintiff has a need for Social Security disability while at school and has "no ability to work and study at the same time."  (AR 310.)

### 8.    Ms. Criscoe

Sabrina Criscoe is Plaintiff's roommate.  Ms. Criscoe filled out a Third-Party Function Report stating that Plaintiff has difficulty hearing, concentrating, understanding, following instructions, completing tasks, handling changes in routine, and is better in a structured routine.  Ms. Criscoe stated

1  that Plaintiff has mood swings (from happy and motivated to sad and sleeping all day), has poor

2  boundaries, often rambles in interactions, doesn't follow through with instructions, and argues when

3  in conversation or instruction.  However, Ms. Criscoe also stated that Plaintiff has no problem with

4  personal care, preparing her own meals, performing basic cleaning, shopping in stores, handling her

5  own money, walking, driving, reading, or playing golf.  (AR 204-11.)

6  **B.      The Hearing**

7          At the hearing on Plaintiff's claim, Plaintiff testified along with the Vocational Expert ("VE")

8  Lynda Berkley.  The ALJ posed the following hypothetical to the VE:

9          Let's assume an individual with no—there are no exertional limitations—who is of the
         claimant's age, education and work history, who can have no exposure to loud
10         background noises, can perform simple tasks consistent with SVP: 2 entry-level work,
         who can make simple work-related decisions with few workplace changes and who
11         can have occasional contact—or interaction actually—with coworkers and the public.

12  (AR 58-59.)  The VE concluded that Plaintiff's past work was "highly skilled" and the hypothetical

13  person could not do Plaintiff's past work.  (*Id.*)  The VE, however, concluded that the hypothetical

14  person could do jobs at a lower-skill level.

15  **C.      The ALJ's Findings**

16          An ALJ conducts a five-step sequential inquiry to determine whether a claimant is entitled to

17  benefits.  20 C.F.R. § 416.920.  At the first step, the ALJ considers whether the claimant is currently

18  engaged in substantial gainful activity (i.e., if the plaintiff is currently working); if the claimant is not,

19  the second step asks if the claimant has a severe impairment or combination of impairments (i.e., an

20  impairment that has a significant effect on the claimant's ability to function); if the claimant has a

21  severe impairment, the third step asks if the claimant has a condition which meets or equals the

22  conditions outlined in the Listings of Impairments in Appendix 1 of the SSR; if the claimant does not

23  have such a condition, the fourth step assesses the claimant's RFC and determines whether he is still

24  capable of performing past relevant work.  20 C.F.R. §§ 404.1520, subd. (b), 404.1520, subd. (f).

25          If the claimant is not capable of performing his past relevant work, the fifth and final step asks

26  whether, based on his RFC, age, education, and work experience, the claimant can perform any other

27  existing work in the national economy.  20 C.F.R. §§ 404.1520, subd. (g), 416.920; *Andrews*, 53 F.3d

28

United States District Court
Northern District of California

at 1040.  At the fifth step, the burden shifts to the defendant to demonstrate the existence of a significant number of jobs in the national economy that could be performed by the claimant. *Andrews*, 53 F.3d at 1040.

Here, after conducting the hearing and considering the testimony and evidence, the ALJ followed the above five-step sequential evaluation process.  First, the ALJ found that Plaintiff meets the SSA's insured status requirements through December 31, 2011 and has not engaged in substantial gainful activity since the alleged disability onset date.  Although Plaintiff "worked after the alleged disability onset date, her earnings did not rise to the level of substantial gainful activity."  (AR 20.)

Second, the ALJ determined that Plaintiff has two severe impairments that significantly limit her ability to perform basic work activities: (1) auditory processing disorder; and (2) a learning disability.  (AR 20-21.)  The ALJ found no severe back or neck impairment[1] nor any severe depressive disorder or anxiety disorder.  Regarding Plaintiff's alleged depressive and anxiety disorder, the ALJ stated that she finds "no more than mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace."  (AR 21.)

Third, the ALJ found that Plaintiff does not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P."  (AR 21.)  The ALJ considered Plaintiff's mental impairment under listing 12.05 and concluded that the "evidence does not demonstrate mental incapacity evidenced by dependence upon others for personal needs (e.g. toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded, nor do the claimant's I.Q. scores fall into the range contemplated by the listing."  (AR 21-22.)

Fourth, the ALJ considered the opinions of Dr. Maier, Dr. Khoi, Dr. Hood, Dr. Kalich, Dr. Tomsky, Ms. Berry, and Ms. Criscoe, as well as Plaintiff's daily activities, testimony, and appearance at the hearing.  The ALJ concluded that Plaintiff "has the residual functional capacity to perform a full range of work at all educational levels," but "cannot be exposed to loud background noise, is limited to performing simple tasks consistent with [specific vocational preparation two ("SVP-2")] entry-level

---

[1] Although Plaintiff reported back and neck complaints in 2009 after being involved in a car accident, she stipulated that she has no current back or neck impairments.  (AR 21.)  Plaintiff's motion does not challenge the ALJ's determination with respect to any physical impairment.

United States District Court
Northern District of California

1   work, and can make simple work-related decisions with few workplace changes." (AR 22.) The

2   written RFC did not include the particular limitation identified in the hypothetical given to the VE at

3   the hearing of "occasional contact—or interaction actually—with coworkers and the public." (AR

4   59.)

5          The ALJ accorded great weight to Dr. Khoi's report because "it contains testing of the basic

6   skills necessary to perform basic work activities" and is consistent with Plaintiff's admissions. (AR

7   23.) The ALJ also gave some weight to Dr. Hood, who found no medically determinable impairments

8   and provided no limitations. (AR 23.) "[V]iew[ing] the evidence in a light most favorable to the

9   claimant," however, the ALJ found that Plaintiff can perform simple work in a low stress

10   environment. (*Id.*)

11          The ALJ gave little weight to Ms. Berry's statement that the claimant qualified for support

12   services from the Disabled Services Center at Cal Poly, because Ms. Berry "is not a medical source

13   and because her statement was made in connection [with] higher learning assistance rather than basic

14   work activities." (AR 24.) Similarly, the ALJ gave little weight to Dr. Tomsky's statement that

15   Plaintiff "has no ability to work and study at the same time due to her impairments" because it "is not

16   an opinion that reflects the claimant's functional capacity or limitations and . . . does not say the

17   claimant cannot work." (*Id.*) The ALJ also found that Dr. Tomsky's letter was written just to get

18   Plaintiff special services while attending college and that Dr. Tomsky's own progress notes indicate

19   that Plaintiff is contemplating graduate school to obtain a Ph.D. (*Id.*) Finally, the ALJ initially

20   accorded "no weight" (AR 21) and then "little weight" (AR 24) to Dr. Kalich's report, reasoning that

21   it is an advocacy report not supported by the longitudinal record and is an "evaluation of the

22   claimant's ability to perform activities that are more complex than basic work activities." (AR 21,

23   24.)

24          After considering all of the evidence, the ALJ found that Plaintiff's medically determinable

25   impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's

26   statements concerning the "intensity, persistence and limiting effects" of these symptoms "are not

27   credible to the extent they are inconsistent with the RFC assessment." (AR 24.) The ALJ noted that

28   Plaintiff's daily activities, college attendance, and high scores on Dr. Khoi's evaluation undermine her

United States District Court
Northern District of California

1  credibility.  In addition, the ALJ found that Plaintiff's presentation at the ALJ hearing and her

2  involvement in submitting her "good cause statement for untimely filing" papers further undermine

3  her credibility and indicate that Plaintiff's ability to perform auditory processing skills is "certainly

4  much more sophisticated than is required to perform basic, work-related activities, consisting of one

5  and two-step instructions."  (AR 24.)  The ALJ then compared Plaintiff's RFC with her limitations

6  and concluded, based on the VE's testimony, that "the demands of the claimant's past relevant work

7  exceeds the residual function capacity ("RFC")."  (AR 25.)

8       At the fifth step, the ALJ relied on the VE's testimony in concluding that Plaintiff is "capable

9  of making a successful adjustment to other work that exists in significant numbers in the national

10  economy."  (AR 26.)  Thus, the ALJ ultimately concluded that Plaintiff was "not disabled" under SSA

11  section 1614, subdivision (a)(3)(A).  (*Id.*)

12                              **STANDARD OF REVIEW**

13       Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

14  decision to deny benefits.  A district court may overturn a decision to deny benefits only if it is not

15  supported by substantial evidence or if the decision is based on legal error.  *See Andrews v. Shalala*,

16  53 F.3d 1035, 1039 (9th Cir. 1995); *Magallenes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The

17  Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a

18  preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support

19  a conclusion."  *Andrews*, 53 F.3d at 1039.  Determinations of credibility, resolution of conflicts in

20  medical testimony and all other ambiguities are to be resolved by the ALJ.  *See id.*; *Magallenes*, 881

21  F.2d at 750.  "The ALJ is entitled to draw inferences logically flowing from the evidence."  *Gallant v.*

22  *Heckler*, 753 F.2d 1450 (9th Cir. 1984) (internal citations omitted); *see Batson v. Commissioner*, 359

23  F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one

24  rational interpretation, we must defer to the ALJ's conclusion.").  "The court may not engage in

25  second-guessing."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  "It is immaterial that

26  the evidence would support a finding contrary to that reached by the Commissioner; the

27  Commissioner's determination as to a factual matter will stand if supported by substantial evidence

28

because it is the Commissioner's job, not the Court's, to resolve conflicts in the evidence." *Bertrand v. Astrue*, No. 108CV00147, 2009 WL 3112321 at *4 (E.D. Cal. Sept. 23, 2009)

### LEGAL STANDARD

A claimant will be considered "disabled" under the SSA if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423, subd. (d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423, subd. (d)(2)(A).

### DISCUSSION

Plaintiff argues that the ALJ (1) improperly rejected the opinions of Dr. Kalich, Dr. Maier, Ms. Berry, and Ms. Paton; (2) failed to explain her consideration of Ms. Criscoe's lay testimony; (3) improperly discredited Plaintiff's testimony; (4) failed to properly assess Plaintiff's severe impairments; (5) failed to properly assess Plaintiff's RFC.

**A.**     **Consideration of Medical Sources**

Plaintiff maintains that the ALJ erred by rejecting the opinions of Dr. Kalich, Ms. Berry, Dr. Maier, and Ms. Patton.

An opinion from a treating physician is entitled to more weight than an opinion from non-treating physicians, and an opinion from an examining physician is entitled to more weight than an opinion from a non-examining physician. *See* 20 C.F.R. §§ 404.1527(c); *Andrews*, 53 F.3d at 1040-41. If uncontroverted by another opinion, the ALJ must provide clear and convincing reasons for rejecting the opinions of examining physicians; if controverted, the ALJ must only provide specific and legitimate reasons. *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) ("[T]he Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician. . . . [T]he opinion of an examining doctor, even if contradicted by another

United States District Court
Northern District of California

10

1   doctor, can only be rejected for specific and legitimate reasons that are supported by substantial

2   evidence in the record." (citations and internal quotation marks omitted)).

3        Where a treating physician's opinion is contradicted by a non-treating source, however, and

4   the opinion of a non-treating source is based on independent clinical findings, the opinion of the non-

5   treating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve

6   the conflict. *Andrews*, 53 F.3d at 1041. Where, on the other hand, the opinion of a non-treating source

7   contradicts that of the treating physician but is not based on independent clinical findings, or rests on

8   clinical findings also considered by the treating physician, the treating physician's opinion may be

9   rejected only if the ALJ gives specific, legitimate reasons supported by substantial evidence in the

10   record for doing so. *Id.*

11        Dr. Kalich, Ms. Berry, Dr. Maier, and Ms. Patton are non-treating, examining sources whose

12   opinions are contradicted by other non-treating sources.  Thus, to discount their opinions, the ALJ

13   must provide specific and legitimate reasons supported by substantial evidence in the record for doing

14   so.

15        **1.    Dr. Kalich**

16        Dr. Kalich, a psychiatrist, examined Plaintiff once and diagnosed her with a mood disorder,

17   anxiety disorder, and personality disorder.  Dr. Kalich opined that Plaintiff has mild to moderate

18   limitations in social functioning, concentration, persistence, and pace.  Dr. Kalich also opined that

19   Plaintiff "likely experiences no impairment with regard to most activities of daily living." (AR. 391.)

20   The ALJ accorded "no weight" or "little weight" to Dr. Kalich's opinion because (1) it was not

21   supported by the longitudinal record, (2) it was an evaluation of Plaintiff's ability to perform activities

22   more complex than basic work activities, and (3) it was an "advocacy report." (AR 21, 24.)

23        The ALJ found that Dr. Kalich's report was not supported by the longitudinal record because

24   it was at odds with Dr. Khoi's and Dr. Hood's reports, both of whom also assessed Plaintiff's mental

25   limitations.  (AR 21.)  The ALJ stated that she gave those reports "greater weight because the

26   conclusions are more consistent with the claimant's own admissions," which included attending

27   school, shopping, running errands, socializing, and attending religious activities.  (*Id.*)  The ALJ also

28   noted that Plaintiff is living with a roommate in a rented apartment.  Thus, the ALJ found "no more

United States District Court
Northern District of California

1    than mild limitation in activities of daily living and social functioning and moderate limitation in

2    concentration, persistence, or pace."   (*Id.*)

3           The ALJ's decision to adopt Dr. Khoi's and Dr. Hood's opinions over Dr. Kalich's is

4    supported by specific and legitimate reasons.  As the ALJ explained, Dr. Khoi's and Dr. Hood's

5    opinions are more consistent with Plaintiff's admissions, particularly as to her social functioning.  Dr.

6    Kalich's conclusion that Plaintiff has a mild to moderate limitations in social functioning,

7    concentration, persistence, and pace is at odds with Plaintiff's admissions that her usual activities

8    include going to school, socializing with friends and family, and attending religious activities.  In

9    other words, Dr. Kalich's opinion that Plaintiff has moderate limitations in, among other things, social

10   functioning is undermined by Plaintiff's active social life.  Further, the moderate limitations in

11   concentration, persistence, and pace is inconsistent with Plaintiff's past and current status as a college

12   student pursuing an engineering degree, with a desire to attend graduate school.  The decision to reject

13   Dr. Kalich's opinion in light of its inconsistency with Plaintiff's activities and with other opinions that

14   are more inline with her activities is specific and legitimate and supported by substantial evidence.

15          Plaintiff argues that daily activities such as washing, dressing oneself, preparing meals, and

16   doing laundry are not inconsistent with Dr. Kalich's assessment of work-related limitations.

17   Plaintiff's argument, however, ignores the more substantial social and cognitive activities Plaintiff

18   engages in, such as going to school and socializing with friends.

19          To the extent the ALJ determined that Dr. Kalich's report was inconsistent with the

20   longitudinal record because there is no treatment with a mental health professional, the ALJ was

21   incorrect.  Dr. Kalich's report indicates that Plaintiff received some individual counseling from her

22   therapist, Mr. Estrada, for approximately one year.  (AR 388-89.)  While the detail of this treatment is

23   lacking, it does show at least some treatment with a mental health professional.  "[T]he fact that

24   claimant may be one of millions of people who did not seek treatment for a mental disorder until late

25   in the day is not a substantial basis on which to conclude that [a doctor's] assessment of claimant's

26   condition is inaccurate."  *Van Nguyen v. Chater*, 100 F.3d 1462, 1464-65 (9th Cir. 1996).

27   Nonetheless, any error was harmless because other specific and legitimate reasons support the ALJ's

28   decision to reject or give reduced weight to Dr. Kalich's opinion.  *See Molina v. Astrue*, 674 F.3d

United States District Court
Northern District of California

1104, 1111 (9th Cir. 2012) ("[W]e may not reverse an ALJ's decision on account of an error that is harmless."); *see also Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[T]he relevant inquiry in this context is . . . whether the ALJ's decision remains legally valid, despite such error."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding error to be harmless because it did not negate the validity of the ALJ's ultimate conclusion, which was still supported by substantial evidence, and because the ALJ provided other specific and legitimate reasons for discrediting Plaintiff's testimony).

The ALJ also afforded no weight, or little weight, to Dr. Kalich's report because it is an evaluation of Plaintiff's ability to perform activities more complex than basic work activities.  (AR 24.)  This reason is also specific and legitimate.  Plaintiff insists that Dr. Kalich is not discussing her "ability to perform 'complex' works . . . [but] is opining on [her] inability to perform one of the basic mental demands of competitive, renumerative, unskilled work, i.e., the ability to respond appropriately to supervision, coworkers, and usual work situations."  (Dkt. No. 21 at 11 (internal quotation marks omitted).)  However, Dr. Kalich's report regarding social functioning in the workplace setting is based on Plaintiff's personal work history, which was highly skilled.  (*See* AR 59.)  For instance, Dr. Kalich opines that "a personality disorder . . . is the primary cause of [Plaintiff's] inability to maintain employment," and that Plaintiff's "inability to get along with co-workers and supervisors has led her to quit or be terminated from almost all of her prior jobs."  (AR 391.)  The ALJ correctly criticizes this opinion since it evaluates Plaintiff's social functioning in the context of a highly skilled job without acknowledging that social functioning abilities are likely to fluctuate depending on the skill-level the job requires.  If the tasks Plaintiff is assigned are too difficult for her, it is logical that her relationships with supervisors and co-workers would be strained as a result.  Regarding Plaintiff's abilities involving concentration, persistence, and pace, Dr. Kalich similarly assessed Plaintiff's difficulties in the context of her challenges in college.  (AR 391 ("[T]hese symptoms created difficulty in her ability to concentrate in the classroom, and she was unable to complete her Associates degree as expected.").)  That Plaintiff was unable to complete a secondary degree because of inadequate concentration is not an assessment of Plaintiff's ability to complete basic work activities.

1    The ALJ also rejected Dr. Kalich's report because it was obtained at the request of counsel.  A

2    so called "advocacy report" may provide a specific and legitimate reason for discrediting a medical

3    opinion if there is evidence of "actual improprieties," if the opinion itself provides grounds for

4    suspicion as to its legitimacy, or if there is no objective medical basis for the opinion.  *Van Nguyen*,

5    100 F.3d at 1464.  That the report was requested by counsel, alone, is not sufficient.  *Id.*  Here, the

6    ALJ identified no evidence of actual improprieties.  *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir.

7    1995) (concluding that evidence of actual improprieties must be shown since "[t]he Secretary may not

8    assume that doctors routinely lie in order to help their patients collect disability benefits").  Nor did the

9    ALJ identify any grounds for doubting the report's legitimacy.  Thus, while, as discussed above, Dr.

10   Kalich's specific conclusions are flawed, that Dr. Kalich's report was obtained at the request of

11   counsel is not a specific and legitimate reason for discrediting Dr. Kalich's opinion.  The error,

12   however, was harmless for the reasons previously explained.  *See Carmickle*, 533 F.3d at 1162.

13          **2.     Ms. Berry**

14          The ALJ gave little weight to the opinion of Ms. Berry, a state-licensed Speech Language

15   Pathologist, who remarked that Plaintiff qualifies for support services from the Disabled Services

16   Center at Cal Poly, because Ms. Berry "is not a medical source and because her statement was made

17   in connection [with] higher learning assistance rather than basic work activities."  (AR 24.)

18          Plaintiff correctly argues that Ms. Berry is an "acceptable medical source" under 20 C.F.R.

19   Section 416.913.  These sections recognize that speech language pathologists may be "acceptable

20   medical sources" for purposes of establishing speech or language impairments if they are "qualified."

21   20 C.F.R. § 416.913(a)(5).  "Qualified" means that the speech-language pathologist must be licensed

22   by the state professional licensing agency, be fully certified by the state education agency in the State

23   in which they practice, or hold a Certificate of Clinical Competence from the American Speech-

24   Language-Hearing Association.  *Id*.  Ms. Berry is a licensed Speech Language Pathologist in

25   California and has received a Certificate of Clinical Competence in Speech Language Pathology.  (AR

26   290.)  The ALJ, therefore, erred in according Ms. Berry's statement "little weight" because she is not

27   a medical source.  However, this error was harmless because, as discussed below, the ALJ provided

28

United States District Court
Northern District of California

14

1    another, legitimate reason for giving reduced weight to Ms. Berry's opinion.  *See Molina*, 674 F.3d at

2    1111; *see also Carmickle*, 533 F.3d at 1162.

3            The ALJ's reduction of the weight given to Ms. Berry's opinion was not error because "her

4    statement was made in connection [with] higher learning assistance rather than basic work activities."

5    (AR 24.) Plaintiff argues that the purpose for which the report obtained is not a legitimate reason for

6    rejecting it if there is no other evidence to undermine the credibility of the report.  Plaintiff also

7    maintains that Ms. Berry's recommendations are transferrable to an unskilled work situation and the

8    ALJ did not offer "specific and legitimate" reasons to reject the proposed accommodations in a work

9    setting.

10           Although Plaintiff is correct that the purpose for which the report was obtained, by itself, is

11   not a legitimate basis for rejecting it, there is a difference between the *purpose* for which the report

12   was obtained and the *context* in which Plaintiff was evaluated.  Here, there is a marked difference

13   between Ms. Berry assessing Plaintiff in the context of a higher education setting and in the context of

14   whether she can perform basic work activities.  *See Ochoa v. Comm'r of Soc. Sec. Admin.*, 438 Fed.

15   Appx. 615, 616 (9th Cir. 2011) (holding that giving doctor's opinion no weight because patient was

16   examined only once for purpose of citizenship examination, not for his ability to work, was a specific

17   and legitimate reason).  Because the context of Ms. Berry's examination is a specific and legitimate

18   reason to reduce the weight given to her opinion, the ALJ did not err.

19       **3.    Dr. Maier**

20           Plaintiff argues that the ALJ erred by not stating what weight, if any, was given to Dr. Maier's

21   report.  Defendant counters that the ALJ "expressly considered and evaluated . . . [but] was not

22   required to credit Dr. Maier's opinion . . . [because it is] inapplicable to the ALJ's evaluation of

23   Plaintiff's ability to do basic work activities," *i.e.*, Dr. Maier evaluated Plaintiff in the context of

24   studying at the university level.  (Dkt. No. 24 at 6.)

25           That the "ALJ did not recite the magic words" or "incantation" to reject Dr. Maier's opinion is

26   not reversible error because the Court may "draw specific and legitimate inferences" from the ALJ's

27   discussion of conflicting reports and evidence in the record that reveal the ALJ's rationale.

28   *Magallanes v. Bowen*, 881 F.2d 747, 753-55 (9th Cir. 1988).  Here, the ALJ detailed Dr. Maier's

United States District Court
Northern District of California

United States District Court
Northern District of California

1   psychoeducational examination, diagnosis, and recommendations for changes at Cal Poly.  At the

2   same time, the ALJ accorded little weight to Ms. Berry's opinion that she "agreed that the claimant

3   should be allowed significant accommodations in the classroom," because it "was made in connection

4   with higher learning assistance rather than basic work activities."  (AR 23-24.)  Because the opinions

5   of Dr. Maier and Ms. Berry were so similar, the inference to draw from the ALJ's discussion is that

6   the ALJ gave little weight to Dr. Maier's opinion (as with Ms. Berry's statements) because it was an

7   evaluation of Plaintiff's capabilities in the context of higher education rather than basic work

8   activities.  As discussed above, this is a specific and legitimate reason to discredit Dr. Maier's

9   opinion.

10          **4.      Ms. Paton**

11          Plaintiff asserts that "the ALJ failed to even comment upon, let alone disregard, the opinion

12   evidence from Ms. Paton," an audiologist.  (Dkt. No. 21 at 13.)  Plaintiff further contends that Ms.

13   Paton's opinion is "especially probative because she discusses some of the workplace

14   accommodations Plaintiff would require secondary to her auditory processing disorder."  (*Id.*)

15          An audiologist is defined as an "other source" and is not given the same deference as medical

16   sources.  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).  The ALJ may discount testimony from "other

17   sources" by giving "reasons germane to each witness for doing so."  *Molina*, 674 F.3d at 1111.  Here,

18   the ALJ did not discount Ms. Paton's testimony; rather, the ALJ did not discuss it at all.  The ALJ,

19   however, was not required to discuss Ms. Paton's testimony because it is redundant with Dr. Maier's

20   report and is "neither significant nor probative."  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

21   1984); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[B]ecause

22   the ALJ is not required to discuss evidence that is neither significant nor probative, . . . we conclude

23   that the ALJ's failure to discuss this report was not error.").

24          When Ms. Paton assessed Plaintiff, Plaintiff had knowledge of her auditory processing

25   disorder and only sought "to know its current extent and effects, in order to help plan

26   accommodations in her undergraduate major in Architecture and Structural Engineering."  (AR 302.)

27   Accordingly, the vast majority of Ms. Paton's report is directed at Plaintiff's limitations in the higher

28   education setting.  In addition, while there is discussion about workplace limitations, that discussion is

United States District Court
Northern District of California

1  directed towards highly skilled jobs Plaintiff would presumably obtain with her engineering

2  education.  (*See* AR 305 ("*Complex* job assignments should be given far enough ahead to give Ms.

3  Dukellis the extra time she needs to deal with the verbiage." (emphasis added).)  Thus, Ms. Paton's

4  report is not "significant or probative" because it is directed towards Plaintiff's abilities in the context

5  of higher education and highly skilled jobs, and the ALJ accordingly was not required to discuss it.

6  *See Vincent*, 739 F.2d at 1394-95.

7         **B.**     **Lay Witness Testimony from Ms. Criscoe**

8        Plaintiff argues that although the ALJ summarized parts of Ms. Criscoe's Third-Party Function

9  Report, the ALJ erred by not giving reasons for crediting or rejecting it.  According to Plaintiff, Ms.

10  Criscoe's report is probative because she directly observed and commented upon Plaintiff's difficulty

11  with appropriate social functioning and handling changes in a routine.

12        Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to

13  work is competent evidence.  *Molina*, 674 F.3d at 1114 (ALJ must "consider testimony from

14  submitted on behalf of claimant" but does not need to "provide express reasons for rejecting

15  testimony from each lay witness").  In assessing Plaintiff's RFC, the ALJ considered Ms. Criscoe's

16  testimony that Plaintiff has difficulty hearing, sleeping, concentrating, completing tasks,

17  understanding, and following directions, but prepares her own meals, performs basic cleaning, shops

18  in stores, handles her own money, walks, drives, reads, plays golf, and has no problems with personal

19  care.  The ALJ noted that Ms. Criscoe's testimony is consistent with Plaintiff's own admissions and

20  high scores on Dr. Khoi's evaluation.  This shows that the ALJ considered and assessed Ms. Criscoe's

21  statements, and found them to be credible.  Thus, it does not appear as if the ALJ rejected her

22  statements, and Plaintiff fails to explain how Ms. Criscoe's testimony is inconsistent with the ALJ's

23  RFC.

24        To the extent that the ALJ rejected Ms. Criscoe's statements because they were inconsistent

25  with a finding that Plaintiff was totally unable to work, the ALJ's failure to provide germane reasons

26  is harmless error because Ms. Criscoe's statements are substantially the same as Plaintiff's.  *See*

27  *Molina*, 674 F.3d at 1122 ("Because the ALJ had validly rejected all the limitations described by the

28  lay witnesses in discussing Molina's testimony, we are confident that the ALJ's failure to give

1   specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate

2   nondisability determination.  Accordingly, the ALJ's error was harmless.").  Ms. Criscoe's testimony

3   is consistent with Plaintiff's and does not describe any limitations beyond what Plaintiff described—

4   which the ALJ discussed and rejected by giving clear and convincing reasons, as discussed below.

5   Thus, the ALJ did not commit reversible error.

6   **C.      Plaintiff's Testimony**

7           Plaintiff asserts that the ALJ erred by discrediting her testimony.  If the claimant has presented

8   objective medical evidence of an underlying impairment which could reasonably be expected to

9   produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ can

10  only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear

11  and convincing reasons" for the rejection.  *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

12  An ALJ's findings concerning credibility must be "grounded in evidence" and articulated with

13  "sufficient[ ] specific[ity] [so as] to make clear to the individual and to any subsequent reviews the

14  weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96–

15  7p, 1996 WL 374186 (July 2, 1996).  In making such a determination, the ALJ may consider at least

16  the following: claimant's reputation for truthfulness, inconsistencies in claimant's testimony,

17  claimant's daily activities, work record, and testimony from physicians and third parties concerning

18  the nature, severity, and effect of the symptoms of which the claimant complains.  See *Thomas*, 278

19  F.3d at 958-59.  The ALJ is not "required to believe every allegation of disabling pain, or else

20  disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. §

21  423(d)(5)(A)."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Further, when evaluating

22  credibility, an ALJ may consider "the claimant's daily activities," 20 C.F.R. §§

23  404.1529(c)(3)(i), 416.929(c)(3)(i); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also*

24  *Fair*, 885 F.2d at 603 (stating that the claimant's daily activities may be evidence upon which an

25  "ALJ can rely to find a pain allegation incredible."), and work history, *see Thomas*, 278 F.3d at 959.

26          The ALJ considered Plaintiff's daily activities, educational accomplishments, her

27  consideration of graduate school, high scores on Dr. Khoi's evaluation, and presentation at the hearing

28  to conclude that Plaintiff's statements concerning her symptoms' intensity, persistence, and limiting

United States District Court
Northern District of California

18

1    effects were not credible to the extent they are inconsistent with her claim that she is totally unable to

2    work.

3           Plaintiff contends that the ALJ erroneously evaluated the medical evidence because Plaintiff is

4    not alleging that she is mentally incapable of performing such activities, or disability on the basis of

5    mental retardation or borderline intelligence.  Thus, Plaintiff argues that "it seems disingenuous to

6    discredit Plaintiff's credibility on the basis of limitations she is not even alleging."[2]  (Dkt. No. 21 at

7    14.)  Finally, Plaintiff argues that the results of Dr. Khoi's test are not a reason to discredit her

8    testimony in areas such as social functioning or need for work accommodations because the ALJ

9    improperly focused on Plaintiff's ability to perform simple instructions, rather than the ability to

10   respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in

11   routine in a work setting.

12          The Court disagrees.  Plaintiff's normal daily activities, educational accomplishments, test

13   results, and presentation at the hearing are clear and convincing reasons on which to discredit

14   Plaintiff's testimony.  That Plaintiff maintains a social life with her family and others, runs all her

15   own errands, goes shopping without difficulty, and interacts sufficiently with her professors and other

16   students to continue her educational pursuits all support the ALJ's finding that Plaintiff's social

17   functioning does not prohibit her from all work.  *See Valentine*, 574 F.3d at 694 (recognizing that

18   although claimant's daily activities did not suggest that he could return to prior work, they did suggest

19   that the alleged severity of limitations were exaggerated).  In addition, Plaintiff's interactions with the

20   ALJ at the hearing are not so dissimilar from interactions Plaintiff would encounter at the workplace

21   that the ALJ's impression of Plaintiff cannot be taken into account.

22          In sum, the ALJ did not "arbitrarily discredit Plaintiff's testimony," *Thomas*, 278 F.3d at 958;

23   rather, the ALJ provided specific, clear and convincing reasons for discrediting Plaintiff's testimony.

24   Thus, the ALJ's credibility determination was proper.

25

26

27

28   _____
     [2] Plaintiff does not dispute that the ALJ was correct in finding that Plaintiff can perform "one and
     two-step instructions."  (Dkt. No. 21 at 15.)

1    **D.      Plaintiff's Severe Impairments**

2          Step two in the disability analysis serves as a "de minimis screening device to dispose of

3    groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  The ALJ is to determine

4    whether the claimant has a "medically severe impairment or combination of impairments."  *Id.*

5          The ALJ found that Plaintiff has two severe impairments that limit her ability to do basic work

6    activities: (1) an auditory processing disorder, and, (2) a learning disorder.  Plaintiff asserts that the

7    ALJ's analysis fails to "properly consider all of the specific medically determinable impairments of

8    which the claimant has been diagnosed." (Dkt. No. 21 at 16.)  Plaintiff claims that she has also been

9    diagnosed with a personality disorder, mood disorder, and anxiety disorder, all of which, as part of Dr.

10   Kalich's report, should have been found to be severe impairments.

11         Even if Plaintiff's other diagnoses should have been considered severe, that error was

12   harmless because the ALJ considered the limitations later in the sequential evaluation process.  *See*

13   *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  The ALJ expressly considered Dr. Kalich's report

14   at step 4, stating that she "accords little weight" to the report.  (AR 24.)  Thus, the ALJ's

15   consideration of Dr. Kalich's report was not limited to the step 2 analysis.  Further, although the ALJ

16   appears to have inadvertently left it out of her written decision, at the hearing, the ALJ included a

17   limitation in her hypothetical to the VE with regard to Plaintiff's interactions with coworkers and the

18   public:

19            Let's assume an individual with no—there are no exertional limitations—who is of the
              claimant's age, education and work history, who can have no exposure to loud
20            background noises, can perform simple tasks consistent with SVP: 2 entry-level work,
              who can make simple work-related decisions with few workplace changes *and who*
21            *can have occasional contact—or interaction actually—with coworkers and the public*.

22   (AR 58-59 (emphasis added).)  Thus, because the ALJ considered Plaintiff's social functioning at

23   steps four and five, any error in finding her other limitations not severe was harmless. *See Lewis*, 498

24   F.3d at 911.

25   //

26   //

27    //

28

### E.   The RFC Determination

Plaintiff argues that the ALJ's RFC is deficient because "it did not include any limitations regarding Plaintiff's social functioning," and because the RFC is inconsistent with the ALJ's reliance on Drs. Khoi and Hood, who both found no limitations.  (Dkt. No. 25 at 1-3.)

As just noted, the ALJ's written RFC differs slightly from the oral RFC given to the VE at the hearing.  Specifically, the written RFC omits the limitation provided to the VE that Plaintiff may only have "occasional" interactions with coworkers and the public.  (*Compare* AR 25 *with* AR 58-59.) The RFC that matters is the one posed to the VE at the hearing; the written RFC—which did not include any limitation not posed to the VE—is subordinate.  Thus, Plaintiff's contention that the RFC included no limitation in regards to social functioning is incorrect to the extent it refers to the RFC offered at the hearing.

Even if the RFC included no limitation in regards to social functioning, the ALJ's determination would not be undermined by her reliance on Dr. Khoi's and Dr. Hood's opinions, who both found no limitations.  Plaintiff asserts that the ALJ's RFC determination is contradictory to the extent she accorded "great weight" to Dr. Khoi's report and "some weight" to Dr. Hood's report and rejected all the other medical opinions, yet still concluded that Plaintiff had some limitations.  The Court is not persuaded.  Immediately following the ALJ's analysis of Dr. Khoi's and Dr. Hood's opinions, the ALJ specifically stated that "view[ing] the evidence in a light most favorable to the claimant," Plaintiff can perform simple work in a low-stress environment.  (AR 23.)  Given Plaintiff's and Ms. Criscoe's testimony, as well as the opinions that were accorded some weight, the ALJ could reasonably find that Plaintiff had some limitations, as described in the RFC.

Because the ALJ considered all probative medical and opinion evidence and provided a narrative analysis of why substantial evidence supports the ALJ's RFC assessment, the ALJ did not commit error.

//

//

//

//

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the reasons explained above, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.  Judgment will be entered in Defendant's favor and against Plaintiff.

IT IS SO ORDERED.


Dated: December 30, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE